**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | * | **Chapter 11** |
| **SPLIT VEIN COAL COMPANY, INC.,** | * | |
| Debtor | * | **Case No.: 1-03-bk-02974MDF** |
| | * | |
| **SPLIT VEIN COAL COMPANY, INC.,** | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **Adv. No.: 1-07-ap-00006** |
| | * | |
| **GILBERTON COAL COMPANY and** | * | |
| **SEEDCO NP, LLC,** | * | |
| Defendants | * | |

## OPINION

In the matter before me two coal companies dispute their relative rights to certain coal refuse located on land owned by the defendant, Gilberton Coal Company ("Gilberton"). The dispute arises from an agreement (the "Agreement") that the parties executed in 1991 in which Gilberton granted Split Vein Coal Company, Inc. ("Debtor") a license to remove "raw bank material, culm ('Bank Materials') contained in the Excelsior Bank ('Bank')."

On January 11, 2007, Debtor filed the complaint commencing this adversary case seeking compensatory damages for approximately 600,000 tons of coal refuse that Debtor placed on the Excelsior Bank and property owned by Seedco NP, LLC,[1] which Gilberton removed and processed. Debtor alleges that the coal refuse in question was recovered from lands owned by

---

[1]Seedco NP, LLC ("Seedco"), which also is a defendant in the within adversary action, is a successor in interest to Northumberland County, which also entered into a strip mining agreement with Debtor. Seedco denies that Debtor has any interest in coal refuse deposited on land that it owns, but did not file a motion for summary judgment.

1

Debtor or its affiliates and, therefore, is not subject to the terms of the Agreement. Debtor also seeks to enjoin Gilberton from further removal of coal refuse from the Excelsior Bank.

Gilberton has responded to the complaint by asserting that any coal refuse deposited on the property by Debtor was forfeited when the Agreement terminated by its own terms. According to Gilberton, the Agreement expired because Debtor failed to make the required minimum royalty payments and suspended operations in violation of the Agreement. While not conceding that the coal refuse deposited on its land originated from other locations, Gilberton argues in its answer to the complaint that the Agreement provides that *any* coal refuse not removed when the Agreement terminated became its property. Gilberton also filed a counterclaim for damages against Debtor for the destruction of coal refuse that belonged to Gilberton and for reimbursement of expenses. According to Gilberton, these claims arise from efforts Gilberton took to extinguish a fire that ignited in the coal refuse on its land while Debtor was engaged in reclamation activities. Debtor responded to the counterclaim by averring that it was not responsible for starting the fire, that it had undertaken all reasonable efforts to extinguish it, and that the fire was burning in coal refuse from other sources deposited by Debtor on the Excelsior Bank, not in coal refuse recovered from Gilberton's land.

On August 6, 2007, Gilberton filed the instant motion for summary judgment. In the motion Gilberton argues that under the terms of the Agreement any coal refuse remaining on Excelsior Bank at expiration of the Agreement reverts to Gilberton. Further, Gilberton alleges that because the Agreement expired by its own terms before Debtor filed its petition, as a matter of law Debtor has no rights in the coal refuse on its land and is not entitled to recover damages.

2

Gilberton requested summary judgment in its favor on the issue of Debtor's interest in the coal refuse and Debtor's claim for compensatory damages. In support of its motion for summary judgment, Gilberton submitted a "Statement of Undisputed Facts" and supporting affidavit. Debtor filed a response to the Gilberton's statement with a supporting affidavit disputing most of the facts that Gilberton asserted were undisputed. Set forth below are the facts that the Court has determined are undisputed. [2]

## Factual Findings

On September 12, 1991, Gilberton and Debtor entered into an Agreement which granted Debtor "the exclusive right, license and privilege" of reclaiming coal refuse contained in the Excelsior Bank located on lands near the Village of Excelsior, Northumberland County, Pennsylvania. The Agreement granted these rights to Debtor for an initial term of one year from April 1, 1991, "and thereafter from month to month unless cancelled, whether at the end of the initial term hereof or at any time subsequently by either party hereto, on ten (10) days' (sic) written notice to the other. . . ." The Agreement required Debtor to pay a royalty of $3.50 for each ton of coal refuse removed. The Agreement further required a minimum royalty of $1,000.00 per month, payable in advance of the month, regardless of whether or not Debtor removed material from the site.

The Agreement contained the following provisions regarding ownership of the coal refuse upon termination.

---

[2]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (O). This Opinion constitutes the findings of fact and conclusions of law required to be made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is made applicable to contested matters by FRBP 9014.

8. <u>Manner of Working</u>.

\*\*\*

All Bank Material not removed and transported from the Premises at the expiration of this agreement, or not removed at the time of any breach of this agreement, shall be and remains the property of Gilberton.  [Debtor's] failure to commence removal of the Bank Material, or a suspension or stoppage of removal on the Premises for a continuous period of four (4) months, shall nullify this [A]greement, and thereupon, or at any time thereafter, Gilberton may declare this [A]greement terminated and void, and without legal procedure, Gilberton may retake possession of the Premises together with all improvements thereon.

\*\*\*

14. <u>Title to [Coal Refuse]</u>

[Debtor] obtains no title to the Bank Material  being removed in accordance with this agreement except as removed from the bank and for which payment has been made by [Debtor] to Gilberton.

\*\*\*

19. <u>Gilberton's Remedies Upon Default</u>.

In the event of any breach . . . on the part of [Debtor]. . . , this [A]greement shall be subject to cancellation at the option of Gilberton and then become absolutely void, and of no effect, and after ten (10) days written notice by Gilberton to [Debtor], it shall and may be lawful for Gilberton to re-enter and take possession of the Premises. . . .

In the event the minimum monthly Royalty . . . or the coal removal Royalty . . .  shall remain unpaid. . . , after giving ten (10) days' (sic) notice of such default this [A]greement shall be subject to cancellation at the option of Gilberton and then become absolutely void, and of no effect, and Gilberton shall have the right to immediately proceed to judgment against [Debtor] . . . .

Debtor removed coal refuse from the Excelsior Bank for several years under the terms of the Agreement.  In July 1998, Debtor ceased making minimum royalty payments.  In July 2002 Debtor ceased all coal refuse processing on the Excelsior Bank and in January 2003 began reclamation activities on the site. Gilberton provided Debtor with no written notice of a breach or of  termination of the Agreement  prior to the date on which Debtor filed its bankruptcy petition.

After Debtor ceased removing coal refuse from the site, a fire was started in the bank, which was not extinguished on the date that Debtor filed its bankruptcy petition. Gilberton has

4

taken responsibility for fighting the fire, which has necessitated the removal of some of the coal refuse from the property. After a hearing before the Court on January 18, 2007, Gilberton has filed monthly reports providing an accounting of all coal refuse removed from the site.

At the time Debtor filed its petition, it did not list as an asset the coal refuse that is the subject of the instant complaint. It also did not list as an asset on schedule "G" the Agreement with Gilberton. On January 11, 2007, the same date the adversary was filed, Debtor filed an amendment to schedule "G" adding the Agreement and an amendment to schedule "B" listing as an asset "approximately 600,000 tons" of coal refuse of an "unknown" value located on lands belonging to Gilberton and Northumberland County (sic).

### Discussion

A motion for summary judgment seeks resolution of a controversy based on the pleadings alone without a hearing to resolve disputed issues of fact. The pleadings before me include the Debtor's complaint, Gilberton's answer and counterclaim, Gilberton's motion for summary judgment, Debtor's response to Gilberton's motion, briefs and the affidavits of the parties. A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056 incorporating Fed. R. Civ. P. 56(c). The non-movant's allegations are to be taken as true, and when they "conflict with those of the movant, the former must receive the benefit of the doubt." *Valhal Corp. v. Sullivan Assocs.,* 44 F.3d 195, 200 (3d Cir.1995) (quoting *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976)).

In response to a motion for summary judgment, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting

Fed. R. Civ. P. 56(e)). *Blair v. Scott Specialty Gases* 283 F.3d 595, 603 (3d Cir. 2002). At the

summary judgment stage, a court may not weigh the evidence or make credibility determinations.

*See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.,* 998 F.2d 1224, 1230 (3d

Cir. 1993). Therefore, to raise a genuine issue of material fact, "'the [summary judgment]

opponent need not match, item for item, each piece of evidence proffered by the movant, but

simply must exceed the 'mere scintilla' standard." *Id.; see also Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In its summary judgment motion, Gilberton argues that there is no genuine issue of

material fact in this case because the Agreement dictates the outcome. Gilberton asserts that the

Agreement gave it title to all coal refuse on the Excelsior Bank when Debtor ceased making

royalty payments in 1998. Further, Gilberton argues that Debtor abandoned any interest it may

have retained in the coal refuse when reclamation activities were commenced.

Debtor does not deny that it ceased making royalty payments, but also asserts,

alternatively, that it did not breach the Agreement or if it did breach the Agreement, the breach

was waived by Gilberton. Debtor's admissions on the record that it did not make royalty

payments after 1998 are sufficient to find that Debtor breached the Agreement. The issue,

though, is not whether or not there was a breach, but whether the Agreement terminated upon

the breach or, alternatively, whether Gilberton was required to provide notice of the breach and

its election to cancel the Agreement.

The provisions of the Agreement are unambiguous on this issue. Paragraph 19 provides

that in the event of "any breach or nonperformance," the Agreement is subject to cancellation at

6

Gilberton's option and, after ten days written notice, Gilberton may re-enter and take possession of the property. Accordingly, although there was a breach of the Agreement pre-petition, there is a question of fact as to whether the Agreement was terminated pre-petition.[3]

Even if I were able to find on the record before me that the Agreement was terminated before Debtor filed its petition, Debtor disputes that the provisions of the Agreement are germane to the question before the Court. Debtor asserts that the coal refuse it seeks to recover was obtained from other strip mines and deposited on Gilberton's land.[4] Paragraph 8 of the Agreement states that Gilberton will obtain title to all "Bank Material," which is defined as coal refuse from the Excelsior Bank, upon the occurrence of the breach or expiration of the Agreement. Therefore, if the coal refuse was obtained from the Excelsior Bank, the Agreement clearly provides that it became Gilberton's property when the breach occurred. But if the coal refuse is not part of the "Bank Material," the Agreement would not determine ownership of the material. Further, Debtor asserts that it did not abandon its interest in the coal refuse by commencing reclamation of the mining site. Because there is a factual dispute regarding title to the coal refuse, summary judgment is not appropriate.

---

[3]Paragraph 8 of the Agreement states that Debtor's failure to commence removing Bank Material or suspension of removal of the coal refuse for four or more months will "nullify this [A]greement." This provision seems to provide for automatic rescission of the Agreement upon default. But the clause that follows clarifies that the Agreement is not "nullified" unless Gilberton declares that the Agreement is "terminated and void."

[4]As noted by Gilberton, the Agreement did not authorize Debtor to deposit coal refuse from other locations on its property. Debtor alleges that Gilberton knew that coal refuse from other locations was being deposited on the Excelsior Bank and did not object.

7

An order will be entered denying Gilberton's motion and setting a trial date on Debtor's complaint against Gilberton and Seedco and Gilberton's counterclaim against Debtor.

By the Court,

Mary D. France
Bankruptcy Judge

Date: December 7, 2007

*This document is electronically signed and filed on the same date.*